# UNITED STATES BANKRUPTCY COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

IN RE:

| | |
|---|---|
| **BOBBY JOE DUNCAN** | **CASE NO. 04-82060** |
| **GWENDOLYN M. DUNCAN** | |
| **DEBTORS** | **CHAPTER 12** |

## CHAPTER 12 PLAN PROPOSED BY THE DEBTORS

NOW INTO COURT, through the undersigned counsel, comes Bobby Joe Duncan and Gwendolyn M. Duncan (the "Debtors"), debtors and debtors in possession in the above captioned bankruptcy case, who hereby propose the following Chapter 12 plan, for the satisfaction of their debts:

## ARTICLE I

## CLASSIFICATION OF CLAIMS

**Class 1:**

Administrative and Priority Claims: This class includes all administrative and priority claims under 11 U.S.C. §§ 503 and 507 including post-petition creditors of the debtor. This class will also include all professional fees and the Trustee's statutory entitlement of his fees and expenses.

**Class 2:**

United States of America, Farm Service Agency: The claim of the United States, through the Farm Service Agency, in the amount of $207,419.36, of which the debtor believes approximately $152,000.00 is secured by certain property of the Debtors, being the fair market value of the Debtors' immovable property; certain farm equipment; and the Debtors' shrubs, flowers, and ornamentals,

all of which secure the Debtors' obligation to repay the Farm Service Agency's loan.

**Class 3:**

General Unsecured Claims: This class includes all unsecured claims, which have been filed and allowed, including the unsecured portion of the under-secured claims held by the United States through the Farm Service Agency.

## ARTICLE II

## TREATMENT OF CLAIMS

**A. Treatment of Claims in Class 1:**

Administrative and Priority Claims: Out of the payments made by the debtor to the trustee, all Class 1 claims, including the Trustee's statutory entitlement to fees and expenses, as well as applications by the attorney for the Debtors for compensation and reimbursement of expenses, shall be paid, at the times said claims are approved or allowed by the court and ordered paid prior to any payment on claims to creditors in any other class.

**B. Treatment of Claims in Class 2:**

United States of America, Farm Service Agency: The secured claim of the United States, through the Farm Service Agency is fixed in the amount of $152,000.00. A portion of this amount will be paid through the office of the Chapter 12 Standing Trustee, together with interest at a rate of 3.25% per annum, in installments over a period of 60 months as set forth according to Schedule II set forth below. The remainder of this claim will be paid in full by equal monthly installments over the twenty-five (25) years following the completion of the Chapter 12 at 3.25% interest. The balance of the United States claim will be treated as an unsecured claim.

The Debtors shall be entitled to make use of any cash collateral of this creditor, generated by, and proceeds of, the sale of the Debtors' inventory free and clear of any security interests in favor

of the United States. The United States, shall be adequately protected by the above monthly payments and a post confirmation lien on all of the Debtors' shrubs, flowers, and ornamentals which are replenished at regular intervals.

### C. Treatment of Claims in Class 3:

<u>General Unsecured Claims</u>: This class includes all unsecured claims which have been filed and allowed, including unsecured deficiency claims held by any secured creditor in any other class. After creditors in Classes 1 and 2 have been satisfied in full, the Trustee shall distribute any funds on hand and any further funds collected during the term of the plan to creditors in this class, for a dividend of no less than 13% of their claims.

## ARTICLE III.

## MANNER IN WHICH PAYMENT OF CLAIMS SHALL BE MADE

The Debtors shall make payments to the Trustee in the amount of $12,500.00 annually, for the duration of this plan, which shall be five (5) years, according to the following schedule (Schedule I), reflecting the seasonal nature of the Debtors farming operation:

<u>Schedule I</u>

| Month | Amount |
|---|---|
| January: | $325.00 |
| February: | $650.00 |
| March: | $2,450.00 |
| April: | $2,450.00 |
| May: | $1250.00 |
| June: | $1250.00 |
| July: | $325.00 |
| August: | $325.00 |

September: $650.00

October: $1,250.00

November: $1,250.00

December: $325.00

The Trustee shall make distribution of the payments to the creditors quarterly, beginning in month three of the plan, first to Class 1 and Class 2, the surplus to be distributed to class 3, according to the following schedule, (Schedule II):

<u>Schedule II</u>

II.A. In the first three quarters of the Plan, all funds will be disbursed by the office of the Chapter 12 Standing Trustee to the creditors in Class 1.

II.B. In the remaining seventeen (17) quarters of the plan, all funds will be disbursed by the Trustee first to the creditors in Class 1, with the balance to be disbursed to the Creditors in Class 2.

II.C. In no quarter are the total disbursements to exceed $3125.00, inclusive of all administrative fees and payments to the United States Trustee.

II.D. In no quarter shall the total disbursements to Class 2 exceed $2480.66, with the remainder of any quarterly disbursement to be disbursed to those creditors in Class 3.

II.E. The total dividend to the creditors in Class 3 shall be no less than 13% of their respective claims, and in the last sixteen (16) quarters, this disbursement shall be no less than $331.84.

The remaining portion of the claim of the United States, through the Farm Service Agency, which will then total approximately will be paid in equal monthly installments of 661.51 for the

twenty-five (25) years following completion of the Debtors' obligations under the plan.

## ARTICLE IV.

## EXECUTORY CONTRACTS

All pre-petition executory contracts, unless otherwise treated in this plan, are deemed rejected.

## ARTICLE V.

## REVESTING OF TITLE TO PROPERTY AND CURING OF DEFAULTS

Title to property of the estate, subject to existing liens which are valid in bankruptcy, shall vest in the Debtors upon confirmation of this plan. Upon confirmation of this plan, all defaults to creditors, shall be deemed cured or waived, at the option of the creditor, and the terms of this plan will control all future performance of the obligations to said creditors.

## ARTICLE VI.

## MISCELLANEOUS PROVISIONS:

1) Payments to the Trustee:

A) The Debtors shall make monthly payments to the Chapter 12 Trustee according to the payment Schedule I set forth above. Distribution of the funds remaining in the Trustee's possession at the time of plan completion shall be determined upon the Trustee's application to this court for approval of a final accounting, same to be on notice and hearing to creditors and other parties in interest.

B) The Debtors shall continue to render monthly reports of operations to the Trustee and the United States, through the Farm Service Agency, in the same fashion as those made prior to confirmation, pursuant to the adequate protection order. If requested by the Trustee, or the United States Farm Service Agency, the Debtors shall render an annual accounting of their operations on

such forms and under such terms and conditions as the Trustee may require.

    C) Payments shall be made to the Trustee on the last day of the month in which the plan payment is due.

    D) Unless otherwise ordered by the court, the Debtors must satisfactorily make five (5) years of complete payments under this plan, to be disbursed under the supervision of the Chapter 12 Trustee before the debtor shall be entitled to any discharge or order closing the case herein.

    E) The Debtors shall execute a form UCC 1-F granting a security interest in and to all shrubs, flowers, and ornamentals owned by the Debtors to secure the Trustee's obligation as a disbursing agent of such funds. In the case of any crops sold by the debtors, any checks representing crop sale proceeds received from any buyer of such crops, shall, in all cases, be made payable jointly to the order of the Debtors, Trustee and any other creditor with a lien bearing against such crops, unless otherwise agreed to by the Chapter 12 Trustee. If any crops which are produced by the debtors are not sold at harvest but are placed into a storage facility and have receipts given by the storing agency, commonly known as warehouse receipts, in all cases, those warehouse receipts shall be issued jointly in the names of the debtors and the Chapter 12 Trustee.

  F) Distributions by the Chapter 12 Trustee shall be made to creditors according to Schedule II, set forth above, beginning 90 days after confirmation of this plan, until a discharge is entered, for no longer than five years. Modifications of secured creditors' rights may extend past the five year term of the plan and are provided for herein.

 2) Other Miscellaneous Provisions:

  A) The debtor shall make no capital improvements and shall hold no funds in reserve (except where specifically authorized), without permission of the court and concurrence of the Trustee.

B) Upon confirmation, the debtor shall provide the Trustee with a lien on the debtor's shrubs, flowers, and ornamentals, and any federal crop insurance proceeds which the debtors grow or receive during the life of this plan. A signed copy of the UCC 1-F crop lien shall be submitted, annually, on or before the 15th of January of each year, to the Trustee, together with a money order in the amount of $20.00, made payable to the Parish Clerk of Court designated by the Chapter 12 Trustee. The lien and assignment shall be subordinated to any reasonable and necessary crop lender or supplier of goods and services to the debtor's farm operations; and/or to disbursements made by the debtor to creditors in Class 1 in the debtor's Chapter 12 plan; and/or to monthly payments made by the debtors as provided for in the plan.

C) The debtor shall be fully authorized and empowered, without the necessity of any further action by or orders of the court, to do any or all of the following:

1) Participate fully in government program benefits, such as commodity loans, government support payments, government subsidy payments, and assignments of such benefits;

2) Mortgage any crops produced by them and harvested by them during the five (5) years of this plan, and prior to the closing of this case to the Commodity Credit Corporation (CCC), under any and all applicable provisions of said federal agency, under the terms of which:

a) CCC shall be granted priority over any and all other claims against the debtor's crops produced during the tenure of this plan, including administrative and other priority expenses; and

b) CCC shall be empowered to take possession of any crops produced by the debtors herein in accordance with the price support loan regulations without application to the court for any additional proceedings or authority, and dispose of the crops in

accordance with the objectives of the price support loan program.

## ARTICLE VII

## LIQUIDATION ANALYSIS

In this bankruptcy case, most of the debtors' assets are either encumbered or exempt. The following is a list extrapolated from the debtor's schedules filed in the above captioned case of non-exempt and non-encumbered assets.

| Assets: | | |
|---|---|---|
| Cash on hand | $ | 1,500.00 |
| Bank Accounts | $ | 2,474.28 |
| Unencumbered Nursery Inventory | $ | 1,500.00 |
| Miscellaneous Personal Property and Equipment | $ | 300.00 |
| **Total** | **$** | **5774.28** |

In a Chapter 7, the Trustee would be entitled to compensation in the amount of $1327.43. This would yield a total dividend of $4446.85 payable to unsecured creditors. In short, the unsecured creditors in Class 4 of this plan would receive approximately 10.37% of their claims. This plan proposes to pays more of a dividend to unsecured creditors, unlike what they would receive in a Chapter 7 bankruptcy. The plan proposes to pay, at a minimum, $5309.44, or 12.38% of their claims, to unsecured creditors over five years. The debtor respectfully submits that this plan meets the best interest of creditor's test.

Alexandria, Louisiana, this 27th day of December, 2004.

Respectfully submitted:

**GOLD, WEEMS, BRUSER, SUES & RUNDELL**

By: <u>**/s/Shawn Kiefer**</u>
Bradley L. Drell (#24387)
Shawn Kiefer (#29292)
P. O. Box 6118
Alexandria, LA 71307-6118
Telephone: (318) 445-6471
Facsimile: (318) 445-6476

**ATTORNEYS FOR DEBTORS IN POSSESSION BOBBY JOE DUNCAN AND GWENDOLYN M. DUNCAN**